UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| THOMAS JOHN LINDBERG, | ) |
| Plaintiff, | ) Case No. 1:05-cv-330 |
| v. | ) Honorable Wendell A. Miles |
| MICHIGAN PAROLE BOARD et al., | ) |
| Defendants. | ) |

**OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996) ("PLRA"), "no action shall be brought with respect to prison conditions . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Because Plaintiff has failed to demonstrate exhaustion of available administrative remedies, the Court will dismiss his complaint without prejudice.

**Discussion**

I.   Factual allegations

Plaintiff presently is incarcerated with the Michigan Department of Corrections (MDOC) and housed at the West Shoreline Correctional Facility. In his *pro se* complaint, he sues the Michigan Parole Board, its chairman, John Rubitschun, and member, James Atterberry.

Plaintiff filed his initial complaint on May 9, 2005. He subsequently filed an amended complaint on May 20, 2005, prior to being granted leave to proceed *in forma pauperis*.

In his complaint and amended complaint, Plaintiff challenges the parole procedures applied by the Michigan Parole Board to deny him parole in 2003, 2004 and 2005.

Following a bench trial, Plaintiff was sentenced on April 4, 1985 by the Wayne County Circuit Court to a term of two to fifteen years and a consecutive term of two years on convictions for manslaughter, MICH. COMP. LAWS § 750.321, and felony-firearm, MICH. COMP. LAWS § 750.227b. On August 13, 1985, while serving time on the manslaughter and felony-firearm offenses, Plaintiff was convicted of uttering and publishing, MICH. COMP. LAWS § 750.249, and false pretenses, MICH. COMP. LAWS § 750.218. The latter two convictions subsequently were reversed and dismissed on July 1, 1988.

On August 1, 1990, Plaintiff was paroled on the manslaughter and felony-firearm convictions. After Plaintiff completed approximately six months on parole, he was arrested for first-degree criminal sexual conduct involving a victim under 13 years, MICH. COMP. LAWS § 750.520b(1)(a). He pleaded guilty to the offense in the Macomb County Circuit Court and was sentenced on September 20, 1991 to a term of 12 to 30 years, to run consecutively to the remainder of the sentences on his manslaughter and felony-firearm convictions.

Plaintiff alleges that on February 13, 2002, his maximum term on the manslaughter and felony-firearm offenses expired, but the MDOC failed to issue a certificate of discharge on those offenses. Thereafter, Plaintiff received his first parole guidelines scoresheet, which he alleges contained inaccurate information, including the fact that Plaintiff's active sentences continued to include manslaughter and felony-firearm. Plaintiff also alleges that the guidelines scoresheet used in scoring his parole eligibility was one implemented by the Department after he was sentenced. He alleges the new guideline scoring sheet uses more restrictive scoring categories and allegedly resulted

in Plaintiff receiving a score reflecting an "average" probability of parole, rather than a "high" probability of parole. After receiving a parole interview, Plaintiff was denied parole in March 2003. Plaintiff alleges that he attempted to correct the errors in the report through the grievance process and through intramural correspondence.

In March 2004, Plaintiff again was interviewed and denied parole. Once again, the reasons given for his parole denial included the incorrect active sentence information and an allegedly incorrect criminal history variable. Plaintiff sought reconsideration, challenging that portion of the record stating that he had a history of violent misdemeanors. On September 16, 2004, Plaintiff received an amended notice of parole, which again denying parole but amended the record to delete the reference to violent misdemeanors.

On March 10, 2005, Plaintiff was considered for parole for a third time. On March 21, 2005, Plaintiff discussed with a staff member the fact that he had received a notice of intent to conduct a parole interview on March 28, 2005. The staff member allegedly advised Plaintiff that he had a right to 30 days notice of the interview, or he could sign a waiver. Plaintiff alleges that, because he was panicked about when the hearing would be rescheduled, he signed the waiver, notwithstanding the fact that he had not had sufficient time to arrange letters of support or make other preparations. After signing the waiver, Plaintiff was called out to a parole hearing the next day, March 22, 2005. At his hearing with Defendant Atterberry, Plaintiff complained of his guideline scoring. Atterberry advised that the parole board was not involved in preparing the scoresheets. On April 7, 2005, Plaintiff received a parole denial that once again included a history of violent misdemeanors.

Plaintiff raises several claims. First, he contends that the parole board's failure to comply with MICH. COMP. LAWS § 791.235(5), violated his right to due process. Second, he alleges that he was denied due process by the parole board's reliance on false and inaccurate information. Third, he alleges that the parole board's use of revised parole guidelines under MICH. COMP. LAWS § 791.233e(6), violates his rights under the Ex Post Facto Clause of the constitution because it changes the legal consequences of acts committed before its effective date and results in Plaintiff receiving a total parole guideline score reflecting an "average" probability of parole rather than a "high" probability of parole.

For relief, Plaintiff seeks a permanent injunction barring use of the revised guideline scoring sheet, barring violation of state law during the interview process, and removing inaccurate information from the parole record. He does not seek immediate release on parole.[1]

II.     Lack of exhaustion of available administrative remedies

Plaintiff has failed sufficiently to allege and show exhaustion of available administrative remedies. Pursuant to 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). The exhaustion requirement is mandatory and applies to all suits regarding prison conditions, regardless of the nature of the wrong or the type of relief sought. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. A district

---

[1] In *Dotson v. Wilkinson*, 125 S. Ct. 1242, 1248 (2005), the Supreme Court held "that a state prisoner's § 1983 action is barred (absent prior invalidation) – no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) – *if* success in that action would necessarily demonstrate the invalidity of confinement or its duration." (Emphasis in original.) Plaintiff does not seek release from prison; rather, he requests future parole hearings be conducted applying different procedures and information. It therefore appears that Plaintiff's action is cognizable under § 1983.

court must enforce the exhaustion requirement *sua sponte. Brown v. Toombs*, 139 F.3d 1102, 1104 (6th Cir. 1998); *accord Wyatt v. Leonard*, 193 F.3d 876, 879 (6th Cir. 1999).

A prisoner must allege and show that he has exhausted all available administrative remedies and should attach to his § 1983 complaint the administrative decision disposing of his complaint, if the decision is available.[2] *Brown*, 139 F.3d at 1104. In the absence of written documentation, the prisoner must describe with specificity the administrative proceeding and its outcome so that the Court may determine what claims, if any, have been exhausted. *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000). In addition, a prisoner must specifically mention the involved parties in the grievance to alert the prison officials to the problems so that the prison has a chance to address the claims before they reach federal court. *Curry v. Scott*, 249 F.3d 493, 505 (6th Cir. 2001); *Thomas v. Woolum*, 337 F.3d 720, 735 (6th Cir. 2003); *Vandiver v. Martin*, No. 02-1338, 2002 WL 31166925, at *2 (6th Cir. Sept. 27, 2002) ("The issues [plaintiff] may raise, and the defendants he may name, in his lawsuit are limited to the specific issues raised, and the specific individuals mentioned, in his grievance.").

In his amended complaint, Plaintiff addresses the issue of exhaustion with some specifics. First, Plaintiff argues that, pursuant to MICH. DEP'T OF CORR., Policy Directives 06.05-100(III)(H) and 06.05.106(II)(U), parole decisions are not grievable:

> Decisions by the Parole Board, including the scoring weights and ranges utilized in developing parole guideline scores, are not grievable. However, a prisoner may challenge the calculation of his/her parole guideline score, including the accuracy of the information used in calculating the score, by filing a grievance pursuant to PD 03.02.130 "Prisoner/Parolee Grievances".

---

[2] To assist prisoners in meeting this requirement, this Court advises prisoners to attach copies of documents evidencing exhaustion in its form complaint. The form complaint, which is required by local rule, is disseminated to all the prisons. *See* W.D. MICH. LCIVR 5.6(a). Plaintiff has chosen to forego use of the form complaint in this action.

MICH. DEP'T OF CORR., Policy Directive 06.05.100(III)(H). However, Plaintiff acknowledges that, pursuant to the quoted policy directive, certain portions of his claims are subject to the grievance procedure, such as his complaints concerning the accuracy of the information used to calculate the score. Plaintiff therefore, has administrative remedies available to address his concerns about his allegedly false history of violent misdemeanors and the parole board's continuing reliance on his manslaughter and felony-firearms convictions in calculating his current offense data. Plaintiff alleges that he filed two grievances related to his parole denials on March 10, 2005 and April 7, 2005 (Grievance Nos. MTF-05-030-0136-16D and MTF- 05-030-0168-16D), though he does not describe what conduct he grieved and who he named in those grievances. *See Curry*, 249 F.3d at 505; *Thomas*, 337 F.3d at 735. Further, according to the amended complaint, both grievances were denied at Steps I and II, and Plaintiff appealed the grievances to Step III, though no decision had been issued at Step III prior to the time Plaintiff filed his complaint.[3]

A plaintiff must pursue all levels of the administrative procedure before filing an action in federal court. *See Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999) ("While we recognize that plaintiff made some attempt to go through the prison's grievance procedures, we must dismiss plaintiff's complaint because he filed his federal complaint before allowing the

---

[3]There are several steps to the MDOC grievance process. First, the grievant must attempt to verbally resolve the issue within two days after becoming aware that a grievable issue exists. Policy Directive 03.02.130, ¶ R (effective Dec. 19, 2003). If the issue is not resolved, within five days after the discussion, the prisoner may prepare a written grievance and submit it to the Step I grievance coordinator. *Id.* ¶ X At Step I, a prison staff member is responsible for responding to a grievance within fifteen days, *id.* ¶ Y, plus an additional fifteen days if an extension is granted by the Step I grievance coordinator. *Id.* ¶ U. After the prisoner receives the response, the prisoner must request an appeal form within five days, and the prisoner must appeal to Step II within five days from receipt of the appeal form. *Id.* ¶ DD. At Step II, the grievance coordinator assigns an appropriate respondent, who is responsible for responding to a grievance within fifteen days, plus an additional fifteen days if an extension is granted by the Step II grievance coordinator. *Id.* ¶¶ DD-EE. Within ten days of receiving a Step II response, a prisoner must appeal to Step III. *Id.* ¶ HH. At Step III, the Prisoner Affairs Section of the Department of Corrections is responsible for responding. *Id.* ¶ GG. Policy requires that no more than ninety calendar days may elapse from the filing of the Step I grievance to the Step III response. *Id.* ¶ U.

administrative process to be completed."); *Brown*, 139 F.3d at 1103 (6th Cir. 1998) (prisoners "must allege and show that they have exhausted all available state administrative remedies"); *accord Lutchey v. Wiley*, No. 98-3760, 1999 WL 645951, at *1 (6th Cir. Aug. 13, 1999) (dismissal of claim for lack of exhaustion was appropriate where prisoners failed to complete the review process before bringing their lawsuit); *Larkins v. Wilkinson*, No. 97-4183, 1998 WL 898870, at *1 (6th Cir. Dec. 17, 1998) ("Furthermore, even though Larkins may not have aborted the grievance procedure regarding the ninth cause of action raised in his complaint, such grievance was not resolved prior to the filing of either his complaint or amended complaint and, consequently, is unexhausted."); *Tucker v. McAninch*, No. 97-3880, 1998 WL 552940, at *2 (6th Cir. Aug. 13, 1998) (plaintiff failed to complete the administrative process when he had grieved and appealed to the warden, but had one more appeal remaining to the director of the department). Here, by his own acknowledgment, Plaintiff failed to complete the grievance process at Step III prior to filing his civil rights complaint. Although no precise time for responding at Step III is set forth in the policy, the policy does require that no more than ninety calendar days may elapse from the filing of the Step I grievance to the Step III response. *Id.* ¶ U. Plaintiff has failed to allow the full ninety calendar days to elapse before filing his complaint. Moreover, although Plaintiff may not be able to grieve all of his claims, such as the factors utilized in reaching his parole guideline score, the failure to exhaust administrative remedies on any of the claims alleged in a complaint renders the complaint unexhausted. As the Sixth Circuit recently has held, a civil rights action containing both exhausted and unexhausted claims must be dismissed for lack of total exhaustion. *Jones Bey v. Johnson*, ___ F.3d ___, 2005 WL 1120283 (6th Cir. April 27, 2005). Accordingly, the Court finds that Plaintiff has failed to demonstrate exhaustion of available administrative remedies.

It is not clear whether Plaintiff may still grieve his claims. Under the policy of the prison, complaints must be resolved expeditiously, and complaints may be rejected as untimely. *See* Policy Directive 03.02.130, ¶ G(4). The Sixth Circuit held that an inmate cannot simply claim that "he has exhausted his remedies or that it is futile for him to do so because his grievance is now time-barred under the regulations." *Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir. 1999) (citing *Wright v. Morris*, 111 F.3d 414, 417 n.3 (6th Cir. 1997)). However, even if the MDOC considers a subsequent grievance to be untimely, a prisoner who has presented a grievance through one complete round of the prison process will nevertheless be deemed to have exhausted available administrative remedies as required by 42 U.S.C. § 1997e(a). *See Thomas*, 337 F.3d at 733.

Because the exhaustion requirement is no longer discretionary, but is mandatory, the Court does not have the discretion to provide a continuance in the absence of exhaustion. *See Wright*, 111 F.3d at 417. Rather, dismissal of this action without prejudice is appropriate when a prisoner has failed to show that he exhausted available administrative remedies. *See Freeman*, 196 F.3d at 645; *Brown*, 139 F.3d at 1104; *White v. McGinnis*, 131 F.3d 593, 595 (6th Cir. 1997). Dismissal for failing to exhaust available administrative remedies does not relieve a plaintiff from payment of the civil action filing fee. *Smeltzer v. Hook*, 235 F. Supp. 2d 736, 746 (W.D. Mich. 2002) (citing *Omar v. Lesza*, No. 97 C 5817, 1997 WL 534361, at *1 (N.D. Ill. Aug. 26, 1997)). Accordingly, the Court will dismiss his action without prejudice.

## Conclusion

Having conducted the review now required by the Prison Litigation Reform Act, the Court will dismiss Plaintiff's action without prejudice because he has failed to show exhaustion as required by 42 U.S.C. § 1997e(a).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $255 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $255 appellate filing fee in one lump sum.

A Judgment consistent with this Opinion will be entered.

Dated: July 19, 2005                             /s/ Wendell A. Miles
                                                      Wendell A. Miles
                                                      Senior U.S. District Judge